IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALLEN L. MOORE,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )          No. 06 C 6088
                                   )
THOMAS MONAHAN, et al.,            )
                                   )
          Defendants.              )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

     Plaintiff Allen L. Moore, currently a detainee in the custody of the Illinois Department of

Human Services ("DHS") under the Illinois Sexually Violent Persons Commitment Act, 725

ILCS 207/1 *et seq.* ("SVP Act"),[1] brings this pro se action under 42 U.S.C. § 1983 regarding

events that occurred at the Joliet Treatment and Detention Facility ("TDF").[2] Defendants

Thomas Monahan, Darrell Sanders, and Tarry Williams ("DHS Defendants") filed the present

motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] Defendants Liberty

Healthcare Corporation, Shan Jumper, and Gerald Grisphover ("Liberty Defendants"), as well as

Defendant Carol Vance, Director of Health Care Services, have also filed motions to dismiss.

---

[1] "This statute allows the court to civilly commit an individual who has been convicted
of a sexually violent offense and is dangerous because the person suffers from a mental disorder
that makes it substantially likely he will commit further acts of sexual violence." *Lieberman v.
Thomas*, 505 F.3d 665, 667 (7th Cir. 2007).

[2] Moore has since been transferred to the DHS facility in Rushville, Illinois.

[3] The Court granted Defendants Jack Graham, Shawndo Cleveland, Leslie Hogan, Steve
Strock, Bernard M. Akpan, and Tammy Chasteen leave to adopt the DHS Defendants' motion to
dismiss.

For the following reasons, the Court grants in part and denies in part Defendants' motions.

## STANDARD OF REVIEW

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint." *Christensen v. County of Boone, Ill.,* 483 F.3d 454, 458 (7th Cir. 2007). Under Fed. R. Civ. P. 8(a)(2), a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which is rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 506, 122 S. Ct. 992, 152 L.Ed. 2d 1 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)); *see also Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). Under Rule 8(a)(2), a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1959 (2007); *see also EEOC. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007). As the Seventh Circuit recently explained, the Supreme Court's decision in "*Twombly* did not signal a switch to fact-pleading in the federal courts." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,* 499 F.3d 663, 667 (7th Cir. 2007) (citing *Erickson*, 127 S.Ct. at 2200). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson,* 127 S. Ct. at 2200. In addition, the Court construes Moore's pro se Complaint liberally. *See Kaba v. Stepp,* 458 F.3d 678, 681 (7th Cir. 2006).

## BACKGROUND

### I.     Cell Reassignment

In his Complaint, Moore alleges that on December 19, 2005, at about 2:35 p.m., Defendant Jack Graham told him that the cell assignment committee had reassigned him to a cell

already occupied by inmate Vincent Limpscomb.  Moore alleges that he told Graham that he did

not want to move in with Limpscomb because Limpscomb outweighed Moore by 80 pounds and

they did not get along.  Moore informed Graham that he would move cells, but not into a cell

with just anyone.  Graham then informed Moore that he did not have an option in the matter –

either he moved in with Limpscomb or they would place him on secure lockdown.  Moore

further alleges that he did not argue with Graham, but asked him if he could get some ice.

Graham gave Moore permission to do so.  After he got his ice, Graham and a security therapist

escorted Moore back to his cell, which Moore entered without incident.

## II.     Extraction of Moore From His Cell

Shortly after Moore returned to his cell, Defendants Graham and Tarry Williams came to

his cell and told him that they were there to confiscate his personal property, informing him that

if he refused to move into the cell with Limpscomb, they would move Moore's property there.

Moore also alleges that Williams refused his request for an inventory list and receipt of his

property.

Moore further maintains that at about 3:00 p.m., Defendants Williams, Graham, Bernard

Akpan, Leslie Hogan, Shawndo Cleveland, Tony Humphrey, and Timothy Burnette came to his

cell.  Williams and Akpan then ordered Graham, Hogan, Cleveland, and Humphrey to extract

Moore from his cell, while Burnette videotaped the extraction.  Moore claims he was punched

and kicked multiple times and then dragged onto the walk way.

Also, Moore alleges that Defendants Thomas Monahan and Darrell Sanders were aware

of this attack because they initially approved and ordered it.  Moore also claims that Defendants

Monahan, Sanders, Williams, Shan Jumper, Lea Chankin, and the Liberty Healthcare

3

Corporation approved of a "policy" of moving a detainee's personal property to the cell to which the detainee had refused to move because he could not get along with the cell's current occupant. Moore alleges that this policy – in effect – placed the personal property in the care of the person with whom the detainee could not get along. Moore alleges that because he refused to give up his personal property, he was physically assaulted and suffered injuries to his head and back and had blood in his urine.

### III. Medical Treatment

Moore further claims that after the alleged assault he asked Defendant Tammy Chasteen if he could see a doctor. She told him that he looked fine to her. Shortly thereafter, Moore alleges that he became dizzy and fell onto the floor of the observation cell in which he had been placed. Chasteen then called the medical health care unit, allegedly stating that she thought Moore was faking it. Thereafter, Defendants Williams, Akpan, Thompson, and a nurse came to the observation cell. Williams and Akpan told Moore to get up so that he could be handcuffed. Moore told them he was in extreme pain and could not get up off the floor. Williams responded that if he did not get up to be handcuffed, then the nurse would not examine him. Further, Moore alleges that the nurse argued with Williams and Akpan and that they finally allowed her to enter the observation cell to examine Moore who was bleeding profusely from a deep cut on his head. Thereafter, Moore was taken to the hospital care unit where his cut was bandaged. Several days later a doctor saw him, gave him pain medication, and scheduled him for X-rays.

### IV. Incidents After Moore's Alleged Assault

Next, Moore alleges that Williams – in order to prevent Moore from filing a lawsuit – gave orders that no one was allowed to talk to Moore, refused to allow Moore to call his family

or his attorney, and allegedly made false and fraudulent charges against Moore so that he would

violate his parole and accordingly would be returned to prison. In addition, Moore claims that

when Defendants returned his personal property on October 4, 2006, family photographs and

legal documents that he intends to use at his SVP Act trial were missing.

## V.    Cell Assignment & Cell Conditions

Finally, Moore alleges that Monahan, Sanders, Jumper, Chankin, Vance, and Liberty

Healthcare use cell assignments as a means to pressure pre-trial detainees into consenting to

sexual offender treatment. Moore also alleges that he was housed in a cell that was roach-

infested year round and plagued with "wasp spiders" and bees during the summer. He claims the

water was foul and contained pollutants. He also alleges that his small cell contained a double

steel bunk, toilet, sink, but had no chair or table. Moore further alleges that his cell was

inadequately heated in the winter and extremely hot in the summer.

## ANALYSIS

## I.    Moore's Claims

In his Complaint, Moore brings several constitutional claims pursuant to 42 U.S.C. §

1983. To state a constitutional claim under Section 1983, a plaintiff must allege that a

government official (1) acting under color of state law, (2) deprived him of a right secured by the

Constitution or laws of the United States. *Christensen v. County of Boone, IL,* 483 F.3d 454, 459

(7th Cir. 2007).

### A.    Sharing Cell with Limpscomb

First, Moore alleges that Defendants violated his constitutional rights when they

informed him that he would be moved into a cell already occupied by Limpscomb, although

Moore objected to this move because he did not get along with Limpscomb and Limpscomb outweighed him. Moore also argues that this cell reassignment was contrary to a policy providing that inmates who did not get along would not be celled together.

### 1. Double Celling

Construing Moore's pro se Complaint liberally, *see Kaba,* 458 F.3d at 681, the Court first addresses the claim of double celling. It is well-established that double celling of detainees does not amount to punishment, and therefore, does not violate a detainee's constitutional right to be free from punishment without the benefit of due process. *See Bell v. Wolfish*, 441 U.S. 520, 530-43, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003). In *Wolfish*, the Supreme Court held that a double bunking policy was not meant to punish pre-trial detainees housed at the facility, and thus did not violate the detainees' constitutional rights. *Id.* at 540. The Supreme Court commented that there is not "some sort of one man, one cell principle lurking in the Due Process Clause of the Fifth Amendment." *Id.* at 542. In *Allison*, the Seventh Circuit considered the conditions of confinement of individuals detained under the Illinois Sexually Violent Persons Act at the Big Muddy Correctional Facility and determined that double celling did not amount to punishment, explaining:

> Details such as double celling add nothing to plaintiffs' contentions. *Wolfish* rejected an argument that this practice equates to punishment. 441 U.S. at 530-43, 99 S.Ct. 1861. College dorms, hospitals, and military barracks house people more than one to a room without amounting to punishment. Just so at Big Muddy.

*Id.* at 1079. Therefore, any claim regarding double celling is not actionable under Section 1983.

### 2. Failure to Protect

Although double celling does not violate Moore's constitutional rights, any claim that

prison officials were deliberately indifferent to Moore's safety may be actionable under the Eighth Amendment.[4]  *See Brown v. Budz,* 398 F.3d 904, 909 (7th Cir. 2005).  Specifically, under the Eighth Amendment, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates," in particular, "to protect prisoners from violence at the hands of other prisoners."  *Id.* (citation omitted).  To state a failure to protect claim, Moore must allege that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) Defendants acted with "deliberate indifference" to that risk.  *Brown*, 398 F.3d at 909 (citation omitted).  To satisfy the first prong, "a plaintiff must allege not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur."  *Id*. at 910.  To satisfy the second prong, a plaintiff must show that the defendant actually knew of the substantial risk of serious harm, yet disregarded it. *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007).

In this case, Moore's allegations do not satisfy either prong of his failure to protect claim. According to the Complaint, Moore told Defendants that he did not get along with inmate Limpscomb and that Limpscomb outweighed him.  Moore, however, does not allege that he told Defendants that Limpscomb had threatened him in any way or that he was exposed to any serious harm, and thus Moore's allegations fail to properly allege the first prong.  Next, Moore does not allege that Defendants knew of any substantial risk of serious harm and yet disregarded it – as required under the second prong of a failure to protect claim.  *See Guzman,* 495 F.3d at

---

[4]  The Court recognizes that detainees such as Moore are protected by the Fourteenth Amendment's Due Process Clause under the circumstances.  *See Brown v. Budz,* 398 F.3d 904, 910 (7th Cir. 2005) (there is little practical difference between Eighth Amendment and Fourteenth Amendment standards).

859; *Brown,* 398 F.3d at 913. Because Moore's factual allegations do not "raise a right to relief above the speculative level," *see Bell Atlantic v. Twombly*, 127 S. Ct. at 1959, he has failed to properly allege his failure to protect claim. The Court thereby dismisses this claim without prejudice.

### 3. DHS Policy

In his Complaint, Moore also asserts that DHS has a policy regarding the celling of inmates who do not get along, yet Defendants forced him to bunk with Limpscomb. Assuming, *arguendo*, that any such policy exists, DHS' violation of its own rule or policy – in and of itself – does not amount to a constitutional violation. *See Allison,* 332 F.3d at 1078-79; *Pasiewicz v. Lake Co. Forest Pres. Dist.,* 270 F.3d 520, 526 (7th Cir. 2001). Because Moore has failed to allege a constitutional claim based on the alleged DHS policy, the Court dismisses this claim without prejudice.

### B. Use of Excessive Force in Extracting Moore from His Cell

Construing Moore's pro se Complaint liberally, Moore also alleges that Defendants violated the Eighth Amendment by using excessive force when they extracted him from his cell after he refused to move. Defendants, on the other hand, argue that the core judicial inquiry in determining whether an official used excessive force in violation of the Eighth Amendment is whether the force was applied in a good-faith effort to maintain or restore discipline rather than to maliciously and sadistically cause harm. *See Hudson v. McMillian,* 503 U.S. 1, 6, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *see also O'Malley v. Litscher,* 465 F.3d 799, 804 (7th Cir. 2006). Put differently, Defendants argue that the force that the security officers used was the type authorized for security purposes in a good-faith effort to maintain discipline.

As discussed, the purpose of a motion to dismiss is to test the sufficiency of a complaint – not to decide the merits of a plaintiff's claim. *See Christensen,* 483 F.3d at 458. Therefore, at this procedural posture, the Court will not – and cannot – determine whether the alleged force was the type authorized for security purposes as Defendants maintain. Because Moore properly alleges an Eighth Amendment excessive force claim, the Court denies Defendants' motion to dismiss this claim.

### C.      Denial & Delay of Medical Care

Next, Moore alleges that Defendants initially denied him medical care after the alleged assault and that his medical care was ultimately delayed. "Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs." *Williams v. Liefer,* 491 F.3d 710, 714 (7th Cir. 2007) (citing *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Moreover, the Due Process Clause of the Fourteenth Amendment prohibits deliberate indifference to the serious medical needs of pretrial detainees. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). Deliberate indifference has both objective and subjective elements. *See Edwards v. Snyder,* 478 F.3d 827, 830 (7th Cir. 2007) (*Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Specifically, to state a claim of deliberate indifference, a plaintiff must allege: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that medical condition. *Williams,* 491 F.3d at 714.

A medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention" constitutes a serious medical need. *Edwards,* 478 F.3d at 830-31 (citation omitted). In this case,

Moore alleges that he suffered injuries to his head and back and that he had blood in his urine as a result of the assault. He further alleges that after he was placed in an observation cell, he became dizzy and fell down and was in so much pain that he could not get up off the floor when ordered to do so. Moore also alleges that he was bleeding profusely from a cut on his head. Based on his allegations, Moore describes an arguably serious medical condition, and thus satisfies the objective component of his deliberate indifference claim. *See Williams,* 491 F.3d at 714; *Edwards,* 478 F.3d at 830-31.

Moore has also sufficiently alleged the subjective component of his deliberate indifference claim. To satisfy the subjective prong of deliberate indifference, Moore must allege that Defendants were aware of and consciously disregarded his medical needs. *See Farmer*, 511 U.S. at 837; *Estelle v. Gamble*, 429 U.S. at 103-04. As alleged in his Complaint, Chasteen's delay in seeking medical care for Moore and the alleged delay by Williams, Akpan, and Thompson in allowing the nurse to examine him sufficiently states a claim. *See Williams,* 491 F.3d at 716 ("reasonable jury could have concluded that a delay in medical treatment unnecessarily prolonged" plaintiff's "pain and may have exacerbated [his] medical condition"); *see also Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004) (recognizing that "hours of needless suffering" can constitute compensable harm). Accordingly, the Court denies Defendants' motion to dismiss Moore's deliberate indifference claim.

### D.      Loss of Photographs & Legal Papers

Next, Moore alleges that Defendants lost two types of personal property – photographs of his family and legal documents for his trial. First, the loss of family photographs does not constitute a deprivation of property without due process of law in violation of the Fourteenth

Amendment if the government provides an adequate postdeprivation remedy for the loss. *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44, 101 S.Ct. 1908, 68 L.Ed. 420 (1981); *see also Wynn v. Southward,* 251 F.3d 588, 592-93 (7th Cir. 2001). Illinois law provides actions for replevin and conversion that are sufficient to redress Moore's claim regarding his photographs. *See Gable v. City of Chicago*, 296 F.3d 531, 539-40 (7th Cir. 2002) (Illinois cause of action for replevin provides adequate postdeprivation remedy); *Stewart v. McGinnis*, 5 F.3d 1031, 1035-37 (7th Cir. 1993) (tort claim may be filed in the Illinois Court of Claims in regard to destruction of property); *Greco v. Guss*, 775 F.2d 161, 169 (7th Cir. 1985) (Illinois cause of action for conversion provides adequate postdeprivation remedy). The Court thereby dismisses Moore's claim regarding the loss of his photographs with prejudice.

In addition, Moore claims that legal papers consisting of documents regarding his conviction which he intends to use in his defense at his anticipated trial are also missing – allegations that trigger a possible constitutional claim concerning the deprivation of his access to the courts. *See Gregory v. Nunn*, 895 F.2d 413, 414-15 (7th Cir. 1990) (per curiam). Moore, however, also alleges that he was not allowed to call his attorney who represents him in his SVP Act claim. Because Moore has alleged that he has an attorney in his underlying action, his right to access to the courts is satisfied. *See Walters v. Edgar*, 163 F.3d 430, 436 (7th Cir. 1998) (inmate represented by counsel "can hardly complain of a denial of access to the courts."); *see also Kunzelman v. Thompson*, 799 F.2d 1172, 1178-80 (7th Cir. 1986) (inadequate law library claim not cognizable when jail provided system of legal assistance by public defenders). Because Moore alleges that he is represented by counsel in his underlying action, the Court

dismisses his access to courts claim with prejudice. *See Edwards,* 478 F.3d at 830 ("A complaint can also allege too much; a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery.").

### E.     Conditions of Confinement

Moore also alleges that Defendants violated his constitutional rights by denying him "humane conditions of confinement." *See Farmer,* 511 U.S. at 832-33, 37. "Humane conditions of confinement" include "adequate food, clothing, shelter, and medical care." *Farmer,* 511 U.S. at 832-33. A sexually violent person – similar to a pretrial detainee – may not be subjected to conditions that amount to punishment without due process of law. *See Youngberg v. Romeo,* 457 U.S. 307, 320-21, 102 S.Ct. 2453, 73 L.Ed.2d 28 (1982); *Sain v. Wood,* ___ F.3d ___, 2008 WL 80643, at *6 (7th Cir. Jan. 9, 2008); *Allison,* 332 F.3d at 1079. In this regard, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg,* 457 U.S. at 320-21; *see also Allison,* 332 F.3d at 1079. Moreover, "[d]ue process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001). Under this standard, the Constitution does not require that detainees receive "optimal treatment." *See West v. Schwebke*, 333 F.3d 745, 748 (7th Cir. 2003). Instead, "all the Constitution requires is that punishment be avoided and medical judgment exercised." *Id.* at 749; *see also Wolfish*, 441 U.S. at 537 (fact that "detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into

'punishment.'"). Put differently, detainees may "be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not be punished." *Allison,* 332 F.3d at 1079 (citation omitted) (persons detained before trial are subjected to the ordinary conditions of confinement).

### 1.     Forced Consent to Participate in Sexual Offender Treatment

Moore alleges that Defendants used cell assignments as punishment and to pressure "sexually violent persons" to consent to participating in sexual offender treatment.[5]  Courts in this district have addressed similar claims concluding that the use of cell assignments and privileges for detainees who participate in sexual offender treatment is warranted based on prison safety and security concerns.  *See, e.g., Hargett v. Adams*, No. 02 C 1456, 2005 WL 399300, at *8 (N.D. Ill. Jan. 14, 2005).  In *Hargett*, Judge Leinenweber concluded that it was not unconstitutional to base the receipt of privileges on a detainee's participation in sexual offender treatment and the detainee's good behavior, stating:

> The use of a variety of statuses within the TDF that correspond with privileges, including room location, increased freedom of movement, and access to certain commissary items, is not atypical of institutional and quasi-correctional settings. There are rational security concerns underlying the decision to have all patients initially begin at a lower end of the privilege continuum:  in many instances, the staff do not initially know the potential risks of a new patient.  In addition, making privileges contingent on good behavior and participation in treatment, creates positive contingencies and reinforcements for productive therapeutic behavior.

*Hargett*, 2005 WL 399300, at *8.  Indeed, the Supreme Court has reasoned that "[a]n essential tool of prison administration ... is the authority to offer inmates various incentives to behave"

---

[5]  Reviewing Moore's pro se Complaint liberally, he makes no allegations that Defendants somehow violated his equal protection rights.  *See Brown v. Budz,* 398 F.3d 904, 916 (7th Cir. 2005).

and the "Constitution accords prison officials wide latitude to bestow or revoke these perquisites as they see fit." *Kune v. Lile,* 536 U.S. 24, 39, 122 S.Ct. 2017, 153 L.E.2d 47 (2002). Meanwhile, other courts in this district have adopted Judge Leinenweber's reasoning in *Hargett*. *See McGee v. Monahan,* No. 06 C 3538, 2007 WL 2728756, at *4-5 (N.D. Ill. Sept. 14, 2007); *Lieberman v. Budz,* No. 03 C 2009, 2007 WL 1810493, at *9 (N.D. Ill. June 19, 2007). The Court agrees with these rulings and likewise adopts the *Hargett* court's reasoning. The Court therefore dismisses this claim with prejudice.

### 2.     Foul, Polluted Water

Next, Moore alleges that the water at the Joliet TDF was foul and contained pollutants. Courts in this district have addressed similar pro se prisoner complaints that the water is unsafe in the Joliet, Illinois area and have uniformly rejected these claims. *See, e.g., Lieberman v. Budz,* No. 03 C 2009, 2007 WL 1810493, at *9 (N.D. Ill. June 19, 2007). As the Seventh Circuit has explained:

> Poisoning the prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment, and might be even if the harm was probabilistic or future rather than certain and immediate, *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not. *McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993); *Steading v. Thompson*, 941 F.2d 498 (7th Cir. 1991); *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988); *Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992) (en banc). Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans. *McNeil v. Lane, supra*, 16 F.3d at 125; *Givens v. Jones*, 900 F.2d 1229, 1234 (8th Cir. 1990). It would be inconsistent with this principle to impose upon prisons in the name of the Constitution a duty to take remedial measures against pollution or other contamination that the agencies responsible for the control of these hazards do not think require remedial measures.

*Carroll v. DeTella*, 255 F.3d 470, 472-73 (7th Cir. 2001).  Based on this precedent, Moore's claim that the water at the Joliet TDF was foul and polluted – the same water used by the area's general population – is without merit.  The Court thereby dismisses this claim with prejudice.

### 3.      Lack of Table & Chair in Cell

Moore also complains that his small cell at the Joliet TDF did not have a table or chair, and thus Defendants somehow violated his constitutional rights.  It is well-settled in this circuit that the deprivation of amenities does not amount to cruel and unusual punishment under the Eighth Amendment.  *See Henderson v. Lane*, 979 F.2d 466, 469 (7th Cir. 1992); *Davenport v. DeRobertis,* 844 F.2d 1310, 1316 (7th Cir. 1988).  Accordingly, a prison official's failure to provide a desk and chair in a plaintiff's cell does not amount to conditions that constitute punishment without due process of law.  *Cf. Luedtke v. Gudmanson,* 971 F.Supp. 1263, 1270 (E.D. Wis. 1997).  The Court thus dismisses Moore's claim based on the lack of a table and chair in his cell with prejudice.

### 4.      Inadequate Heat in Winter & Extreme Heat in Summer

Next, Moore alleges that his cell was inadequately heated in the winter and extremely hot in the summer.  Indeed, prison officials must provide inmates with adequate heat and ventilation.  *See Del Raine v. Williford*, 32 F.3d 1024, 1035 (7th Cir. 1994); *Henderson v. DeRobertis*, 940 F.2d 1055, 1059 (7th Cir. 1991).  In *Del Raine*, the plaintiff alleged that he was stripped searched, placed in an empty cell without any clothing for 15 to 30 minutes at a time, and on one day the wind chill factor was 40 to 50 degrees below zero.  *Id*. at 1050.  Based on the plaintiff's allegations, the Seventh Circuit concluded that "Del Raine's allegations create a possible inference that he was routinely placed in a cell with unreasonably low temperatures and

without adequate clothing," and thus the plaintiff sufficiently alleged his claim based on the cold conditions of his confinement. *Id.* at 1050-51.

Here, Moore's allegations that his cell was inadequately heated in the winter and extremely hot in the summer does not create any such inference. *See Antonelli v. Sheahan,* 81 F.3d 1422, 1433 (7th Cir. 1996) ("Prisoners have a right to protection from *extreme* cold.") (emphasis added). Put differently, Moore's bare-boned allegations do not suggest that he has a "right to relief above the speculative level." *Bell Atlantic v. Twombly*, 127 S.Ct. at 1959. As such, the Court dismisses Moore's claim based on the alleged heat and cold without prejudice.

### 5. Pest Infestation

Moore claims he was housed in a cell that was roach-infested year round and plagued with "wasp spiders" and bees during the summer. Allegations of prolonged exposure to pests, along with significant physical harm, may rise to a constitutional violation. *See Sain v. Wood,* ___ F.3d ___, 2008 WL 80643, at *7; *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (sixteen months of pest infestation is a prolonged deprivation affecting prisoner's health); *see, e.g., Pritchett v. Page,* No. 99 C 8174, 2000 WL 1129891, at *9 (N.D. Ill. Aug. 9, 2000) ("plaintiff's claim that his cell has been infested for many months by 'hazardous bugs' that regularly bite him states a cognizable claim for relief under Section 1983."). Although Moore contends that his cell was infested with pests year round, his factual allegations fail to raise his right to relief above the speculative level because he makes no allegations concerning the prolonged infestation impacting his health. *See Antonelli,* 81 F.3d at 1431. Therefore, the Court dismisses Moore's pest infestation claim without prejudice.

### F. False Information Concerning Parole Report

Moore also alleges that Williams – in order to prevent Moore from filing a lawsuit – gave orders that no one was allowed to talk to Moore and refused to allow Moore to call his family or his attorney. Further, Moore maintains that Williams made false and fraudulent charges against Moore so that he would violate his parole and be returned to prison. Moore attaches to his Complaint the parole violation report indicating that he would be afforded a revocation hearing before the Prisoner Review Board or Parole Board. (R. 1-1, Compl., Exs. A-1.) Moore also attaches the Prisoner Review Board's Report revoking his parole. *See McCready v. eBay, Inc.,* 453 F.3d 882, 891 (7th Cir. 2006) (Federal Rule of Civil Procedure 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

It has long been held that when an inmate has been accorded due process in the form of a disciplinary hearing, his allegation that a disciplinary or conduct report was falsified does not state a cognizable due process claim. *See Lagerstrom v. Kingston,* 463 F.3d 621, 624-25 (7th Cir. 2006); *McPherson v. McBride,* 188 F.3d 784, 787 (7th Cir. 1999); *Hanrahan v. Lane*, 747 F.2d 1137, 1139-41 (7th Cir. 1984). Because Moore was afforded a parole revocation hearing, his claim that Williams fabricated information so that Moore's parole would be revoked does not state a due process claim. *See Lagerstrom,* 463 F.3d at 623 (hearing's procedural safeguards adequate protection against prison official's arbitrary actions). Thus, the Court dismisses Moore's claim based on Williams' alleged "fraudulent" charges against Moore with prejudice.

Meanwhile, how Williams' conduct of not allowing anyone to talk to Moore or refusing to let Moore make calls to his family or attorney would prevent Moore from filing this action is not clear, especially because Moore did file this action – well within the two-year statute of limitations for his constitutional claims. *See Jogi v. Voges,* 480 F.3d 822, 836 (7th Cir. 2007).

The Court accordingly dismisses this claim with prejudice.

In sum, the Court dismisses the following claims with prejudice: (1) Moore's claim based on double celling; (2) Moore's loss of photographs and legal papers; (3) Moore's conditions of confinement claims based on the lack of a table or chair and polluted water; (4) Moore's allegations that cell assignments were used as punishment and to force him to obtain treatment; and (5) Moore's claims based on Williams' alleged conduct of prohibiting him to talk to people and Williams' alleged falsification of Moore's parole report. The Court, however, dismisses Moore's condition of confinement claims based on inadequate heat in winter, extreme heat in summer, and pest infestation without prejudice. Also, the Court dismisses without prejudice Moore's failure to protect claim and his claim based on the alleged DHS policy concerning inmates who do not get along. The following claims remain in this lawsuit: (1) Moore's claim based on the alleged excessive force in extracting him from his cell; and (2) the alleged denial and delay of medical care.

## II.     Defendants' Involvement

The Liberty Defendants argue that the Court should dismiss Gerald Grisphover from Moore's Complaint because Moore only states Grisphover's last name under the recitation of the parties. Because Moore fails to make any allegations against Grisphover, he has not put Grisphover on notice of the claims against him and the grounds upon which they rest. *See Swierkiewicz,* 534 U.S. at 506, *Conley v. Gibson*, 355 U.S. at 47. The Court accordingly grants Defendants' motion to dismiss as to Defendant Grisphover, but also grants Moore leave to amend his Complaint concerning any allegations against Grisphover.

Defendants also argue that some Defendants were not personally involved in one or more

of the remaining constitutional claims. For an individual to be liable under Section 1983, he or she must have participated directly in the constitutional violation. *See Palmer v. Marion Cty.,* 327 F.3d 588, 594 (7th Cir. 2003). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). In other words, Moore must establish that each Defendant "acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer,* 327 F.3d at 594; *see also Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) ("to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation."). In addition, the doctrine of respondeat superior does not apply to Section 1983 actions. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). Thus, to be held liable under Section 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Id.*

Nevertheless, in *Antonelli,* the Seventh Circuit held that dismissing a pro se complaint based on the lack of personal involvement is inappropriate when an official's position justifies an inference that the official may have had some direct involvement in the alleged constitutional violation. *Id.* at 1428. Specifically, the Seventh Circuit concluded that an inference of personal involvement was justified against certain senior officials – such as a county sheriff or prison warden – when the claims alleged "potentially systemic" rather than "clearly localized" constitutional violations. *Id.* at 1428-29.

Moore maintains that the following Defendants were involved in the alleged use of

excessive force in extracting him from his cell – Thomas Monahan and Darrell Sanders authorized the use of excessive force; Tarry Williams, Bernard Akpan, Jack Graham, Leslie Hogan, and Tony Humphrey used excessive force; Timothy Burnette video taped the extraction. Further, Moore claims that the following Defendants were involved in the alleged denial and delay in his medical care – Tammy Chasteen, Tarry Williams, Bernard Akpan, and Nathaniel Thompson. Therefore, these Defendants remain in this action.

In addition, Moore alleges that the following Defendants were directly involved in his cell assignment – Lea Chankin, Steve Strock, Shan Jumper, Carol Vance, and Liberty Healthcare Corporation. As discussed, housing Moore in a pest-infested cell that was extremely cold or hot may rise to a constitutional violation, as well as his allegations concerning Defendants' failure to protect him. Because the Court grants Moore leave to amend these claims, it is premature to dismiss any of the individual Defendants at this time.

The Court, however, grants Liberty Healthcare's motion to dismiss it as a Defendant in this matter because a private corporation cannot be held vicariously liable for its employees' violations of others' civil rights. *Jackson v. Illinois Medi-Car, Inc.,* 300 F.3d 760, 766 (7th Cir. 2002). In addition, although private corporations acting under color of state law are treated as municipalities, Moore has failed to allege that any of the remaining constitutional violations occurred as a result of an express custom or policy. *See id.* The Court grants Moore leave to amend his claim against Liberty Healthcare accordingly.

## III.   Qualified Immunity

Defendants argue that they are entitled to qualified immunity as to Moore's constitutional claims. *See Saucier v. Katz,* 533 U.S. 194, 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001);

*Sain v. Wood*, ___ F.3d ___, 2008 WL 80643, at *6. "[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001). Indeed, a plaintiff need not plead factual allegations that anticipate and also overcome the defense of qualified immunity. *See id.*; *Doe v. GTE Corp.,* 347 F.3d 655, 657 (7th Cir. 2003) ("Affirmative defenses do not justify dismissal under Rule 12(b)(6)."). Under the present circumstances, the Court will not address Defendants' qualified immunity arguments at this time, especially in light of Defendants' inadequate briefing on this subject and Moore's present status as a pro se litigant. Defendants may renew their affirmative defense of qualified immunity later in this litigation.

## IV.     Non-Service on Certain Defendants

Finally, a review of the Court's docket reveals that Moore has failed to make proof of service on Nathaniel Thompson as required by Rule 4 of the Federal Rules of Civil Procedure. The Federal Rules provide: "If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant. . . ." Fed.R.Civ.P. 4(m).

By Minute Order of November 27, 2006, the Court provided for service on Defendants by the United States Marshals Service. The Marshal, however, filed unexecuted returns of service for Defendant Thompson on April 19, 2007, and October 3, 2007. Both returns indicate that Thompson does not reside at the address given for him and that no one at the residence knew him. Ultimately, it is Moore's responsibility to assure service on Defendants. *See* Fed.R.Civ.P. 4(c)(1). The Court thus orders Moore to show good cause in writing why the Court should not

dismiss his Complaint against Defendant Thompson for want of service. The Court will set the deadline once appointed counsel has appeared in the case.

Meanwhile, counsel for Liberty Defendants asserts that Chankin has not been served, yet the Court's docket shows a return of service on August 29, 2007. (*See* R. 108-1.) Counsel must address this matter in further detail. It also appears that the girlfriend of Timothy Burnette accepted service on his behalf on October 31, 2007. (*See* R. 120-1.) Nonetheless, no one has filed an appearance on Burnette's behalf nor is it entirely clear whether service was properly served under Rule 4(e)(2). Counsel for the DHS Defendants must address this matter.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part. The Court grants Moore leave to file an Amended Complaint based on the Defendant's failure to protect him, the pest infestation and extreme heat and cold allegations, whether Defendant Grisphover was personally involved in the alleged constitutional violations, and whether Liberty Healthcare had a custom or policy as discussed above. The Court also orders Moore to show good cause in writing why the Court should not dismiss his allegations against Defendant Thompson for want of service.

**Dated:** January 10, 2008

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**